UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FRANKLIN DAVID CLAYTON,

        Petitioner,

                                   CASE NO. 05-71943
v.                             HONORABLE ARTHUR J. TARNOW

CINDI CURTIN,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DENYING PETITIONER'S MOTIONS FOR A DEFAULT JUDGMENT AND AN EVIDENTIARY HEARING, GRANTING IN PART PETITIONER'S MOTION TO AMEND, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

       This matter is pending before the Court on petitioner Franklin David Clayton's amended habeas corpus petition under 28 U.S.C. § 2254. The amended petition, which was filed through counsel, alleges that Petitioner's right to due process was violated due to the trial court's failure to give certain jury instructions, trial counsel's ineffective assistance, the improper and unconstitutional application of state sentencing law, and appellate counsel's failure to raise these issues on appeal.

       Also pending before the Court are Petitioner's *pro se* motions for a default judgment, for a hearing on dangerousness and release on bond, and to amend his habeas petition. Having reviewed the pleadings and record, the Court concludes that Petitioner is not entitled to the relief he seeks. Accordingly, his habeas petition is denied. His motions for a default judgment and for

a hearing and release on bond are denied. His motion to amend is granted in part and denied in part.

## I. Background

### A. The trial, sentence, and direct appeal

Petitioner was charged in Oakland County, Michigan with sexually penetrating a person without informing the person that he carried the human immunodeficiency virus (HIV). The testimony at Petitioner's jury trial in Oakland County Circuit Court has been summarized by the Michigan Court of Appeals as follows:

> In June 1999, the victim rented a room in a house where three other men lived. According to the victim, he did not know these individuals but had answered an advertisement in the newspaper. The night after he moved in, all four men were watching television and drinking beer together. The victim admitted that he was attracted to defendant and testified that later in the evening he and defendant went into his bedroom. The victim performed oral sex on defendant. Defendant then engaged in unprotected anal sex with the victim. The victim claimed that defendant refused to use a condom because it "didn't feel right." The next morning, defendant again anally penetrated the victim.

> The victim testified that during a walk they took the following morning, defendant told him that he was HIV-positive. The victim contends that defendant never informed him about his HIV status before they engaged in unprotected sexual activities. When the victim discovered defendant was infected with HIV, he went to the hospital and reported the incident to the police. The victim spent the following 2-1/2 weeks living at HAVEN House[1] and never returned to the house where defendant lived. He estimated that since the incident he has been tested "about forty times" for HIV.

> Defendant testified on his own behalf at trial and claimed that he informed the victim of his HIV status before engaging in any sexual acts. Specifically, defendant stated that he told the victim that he had tested HIV-positive but that it

---

[1] Domestic violence shelter.

was now undetectable.[2]  Defendant claimed that he was not attracted to the victim but only had sex with him after four hours of smoking marijuana and drinking. Defendant further maintained that everybody in the house was either drinking or doing some type of drugs on the night in question.  According to defendant, the victim became upset when defendant told him that he only wanted to be friends. Defendant admitted that he had a conversation with the victim the following morning about HIV as they walked past a store that was displaying an AIDS quilt. Defendant told the victim that he had a friend who died from AIDS and repeated that he had once tested positive for HIV.  Defendant stated that at that point the victim became distraught and left.

Officer Andrew Wurm interviewed defendant on April 12, 2000.  In his statement, defendant admitted that he had oral and anal sex with the victim. Defendant further acknowledged that he had been HIV-positive for the past five years.  Defendant stated that he did not inform the victim of his HIV status before engaging in unprotected sexual relations because he assumed the victim knew he was HIV-positive.  At trial, defendant claimed that Officer Wurm gave him a piece of paper and told him to reduce these three facts to a written statement. Defendant further claimed that when he finished writing these facts, he put a dash to write further.  According to defendant, Officer Wurm told him that was all he needed and took the paper from him.  Officer Wurm denied threatening defendant or dictating the contents of the written statement.  Rather, Officer Wurm testified that he simply instructed defendant to write out what defendant told him happened on the night in question.

*People v. Clayton*, No. 230328, at 1-2 (Mich. Ct. App. Sept. 13, 2002) (footnotes in original, but

re-numbered).

On August 21, 2000, an Oakland County Circuit Court jury found Petitioner guilty, as

charged, of sexual penetration by an HIV-infected person with an uninformed partner.  *See* Mich.

---

[2]  Dr. Alena Jandourek testified that defendant was HIV-positive and enrolled in a study with her clinic at the time of the incident.  Dr. Jandourek explained that in July 1999, defendant's HIV level was considered undetectable because he had less than fifty copies of HIV virus per milliliter of blood.  However, she stated that even if a person's HIV level was undetectable, that person still had HIV and could transfer the virus to others.

Comp. Laws § 333.5210.  The trial court sentenced Petitioner as a fourth habitual offender to imprisonment for fifty-eight months to fifteen years.

On appeal, Petitioner alleged that (1) the prosecutor improperly discouraged a defense witness from testifying, (2) he was required to testify under the influence of prescription drugs, (3) he was denied an instruction on a lesser-included offense, (4) the cumulative effect of the errors deprived him of a fair trial, and (5) he was entitled to be re-sentenced due to an error in the scoring of the sentencing guidelines.  The Michigan Court of Appeals affirmed Petitioner's conviction, but remanded his case for re-sentencing due to an error in the scoring of an offense variable of the state sentencing guidelines.  *See Clayton*, Mich. Ct. App. No. 230328.

On remand, the sentencing guidelines were re-scored, and Petitioner was re-sentenced to a term of forty-eight months to fifteen years in prison.  Petitioner appealed his new sentence on different grounds, but the Michigan Court of Appeals affirmed his sentence, *see People v. Clayton*, No. 245260 (Mich. Ct. App. Apr. 27, 2004), and on December 29, 2004, the Michigan Supreme Court denied leave to appeal.  *See People v. Clayton*, 471 Mich. 948; 690 N.W.2d 106 (2004) (table).

### B.  The First Habeas Petition, Motion for Relief from Judgment, and Amended Petition

Petitioner initiated this action in 2005 by filing a *pro se* habeas corpus petition. Respondent moved to dismiss the petition on the ground that most or all of Petitioner's claims were not properly presented to the state courts.  The Court denied Respondent's motion without prejudice, appointed counsel for Petitioner, and directed Petitioner to file an amended petition. Instead of filing an amended habeas petition, counsel for Petitioner moved to have Petitioner's

physical and mental condition evaluated, and Petitioner filed *pro se* motions for a new trial, for a change of venue, and to vacate his sentence.  The Court denied the motions and stayed the habeas petition so that Petitioner could exhaust issues not previously raised in state court.

Petitioner then filed a motion for relief from judgment in the trial court.  He claimed that (1) the trial court erred by failing to give a cautionary instruction after permitting the prosecutor to present impeachment evidence, (2) the trial court failed to correct his presentence report regarding the use of his HIV status as a dangerous weapon or a threat of death, (3) he was denied effective assistance of trial and appellate counsel, (4) the trial court improperly denied his request for an instruction on battery or gross indecency between males, (5) his sentence was cruel and unusual punishment and the trial court failed to order a mental and physical evaluation, (6) his confession was coerced, (7) the statute under which he was charged is unconstitutionally vague, and (8) appellate counsel's ineffectiveness was "good cause" for his failure to properly raise these issues in the prior appeals.  The trial court denied Petitioner's motion on the ground that Petitioner had failed to demonstrate he was actually prejudiced by the alleged errors.  The Michigan Court of Appeals denied leave to appeal the trial court's decision because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Clayton*, No. 284815 (Mich. Ct. App. Dec. 9, 2008).  On September 28, 2009, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Clayton*, 485 Mich. 889; 772 N.W.2d 346 (2009) (table).

Petitioner then moved to reinstate his habeas petition.  The Court granted Petitioner's

motion and ordered him to file an amended petition.  On March 19, 2010, Petitioner filed an

amended petition and supplemental brief through counsel.  His claims  are:

    I.      Mr. Clayton was denied due process where the trial court erred in failing to issue an instruction to the jury after permitting the prosecutor to present evidence to impeach Mr. Clayton, which it later determined was inadmissible.

    II.    Mr. Clayton was denied the effective assistance of trial and appellate counsel through the cumulative errors committed.

        A.    Trial counsel was ineffective for failing to ask the court to order a polygraph, which Mr. Clayton requested of his attorney and to which he was entitled by statute;

        B.    Trial counsel and appellate counsel failed to investigate [his] mental health history

            1.    Trial and appellate counsel failed to pursue a diminished capacity defense and failed to alert the trial court of Mr. Clayton's diminished capacity prior to his testimony.

            2.    Trial counsel was ineffective for failing to impeach the expert witness and in failing to put on a defense expert to counter the testimony of the state's expert witness.

    III.    The trial court improperly denied Defendant's request for an instruction on the cognate lesser included offense of battery or gross indecency between males.

    IV.    Petitioner Clayton's sentence is unconstitutional due to the trial court's failure to correct his state presentence report to eliminate the use of his HIV status as a "dangerous weapon" or "threat of death."

      A.     Due to the improper scoring of his guidelines,
                Petitioner Clayton's sentence is cruel and unusual
                punishment and violates his right to Due Process.

[V.]     Appellant was sentenced under an unconstitutional sentencing
          scheme used by the courts in the State of Michigan in light of the
          United States Supreme Court's ruling in *Blakely v. Washington*,
          542 U.S. 296 (2004).

Petitioner subsequently filed a *pro se* motion for an evidentiary hearing and release on bond and a motion to amend his habeas petition, and counsel for Petitioner moved to withdraw her representation of Petitioner. At a hearing held on September 28, 2010, the Court granted counsel's motion, and on the following day, Petitioner filed a *pro se* motion for a default judgment.

Respondent has not answered Petitioner's motions, but she urges the Court to deny the habeas petition on grounds that Petitioner's claims are unexhausted or procedurally defaulted, are not cognizable on habeas review, or lack merit. Exhaustion and procedural default are not jurisdictional limitations on the Court's power, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010), and Petitioner's claims do not entitle him to relief. Thus, the exhaustion requirement is excused as to any issues that Petitioner may not have fairly presented to the state courts, and there is no need to consider whether Petitioner's claims are procedurally defaulted.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 410-11.

## III.  Discussion

### A.  Failure to Instruct the Jury on an Issue

The first habeas claim alleges that the prosecutor was permitted to admit in evidence a videotape of Petitioner's prior testimony as impeachment evidence.  Petitioner claims that the trial court deprived him of due process of law by failing to read a curative instruction to the jury

after the court ruled in the jury's absence that the videotape was inadmissible. Petitioner also claims that appellate counsel was ineffective for not raising this issue on direct appeal of his conviction.

Petitioner's claim is based on the mistaken notion that the videotape of Petitioner's prior testimony was admitted in evidence. The record indicates that the prosecutor moved to admit the videotape or a partial transcript of the videotape to impeach Petitioner. The trial court stated in the jury's presence that the attorneys could look at the transcript of the tape during the lunch break and that the court would rule on the admissibility of the evidence after the break. The jurors were then excused for lunch, and defense counsel objected to the transcript. The trial court stated that it was not certain the transcript impeached Petitioner, and the prosecutor agreed. The court then ruled in the jurors' absence that the transcript of the videotape was not admissible. (Tr. Aug. 21, 2000, at 90-91, 121-23.)

At the close of the case, the trial court gave the exhibits to the jurors for their use during deliberations (*id*. at 179) and instructed the jurors to consider only the admissible evidence when reaching a verdict (*id*. at 170-71). Because neither the videotape, nor a transcript of the videotape, was admitted in evidence, there was no need to give a cautionary instruction. Petitioner's right to due process was not violated.

## B. Assistance of Counsel

Petitioner alleges next that he was denied the effective assistance of trial and appellate counsel through the cumulative effect of errors committed at trial and on appeal.

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). This standard also applies to claims about appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

To establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "Unless a defendant makes both showings [deficient performance and resulting prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

### 1. Failure to Request a Polygraph

Plaintiff states that he wanted to take a polygraph examination on the issue of whether he committed the charged offense, but his attorney failed to ask the trial court to order an examination. Petitioner maintains that he was entitled to a polygraph examination by statute. However, the statute in question authorizes polygraph examinations or lie detector tests only for

individuals charged with criminal sexual conduct or assault with intent to commit criminal sexual conduct. *See* Mich. Comp. Laws § 776.21(5); *see also* Mich. Comp. Laws §§ 750.520b-e (the criminal sexual conduct statutes) and Mich. Comp. Laws § 750.520g (the statute prohibiting assault with intent to commit criminal sexual conduct). Petitioner was charged with failing to inform a sexual partner that he was HIV-positive. Because he was not charged with criminal sexual conduct, he was not entitled by statute to a polygraph examination.

And even if Petitioner had been tested and were determined to be telling the truth, the results would not have been admissible at trial. *People v. Phillips*, 469 Mich. 390, 397; 666 N.W.2d 657, 661 (2003). For all these reasons, defense counsel was not ineffective for failing to request a polygraph examination.

### 2. Mental Condition

#### a. Diminished capacity

Petitioner alleges that he has been diagnosed with mild neuro-cognitive disorder, which is the result of his HIV infection. He claims that his trial attorney should have investigated his mental health history, arranged to have him evaluated, and then presented a defense of diminished capacity.

Sexual penetration by an HIV-infected person with an uninformed partner is a general intent crime, *People v. Jensen*, 231 Mich. App. 439, 454-55; 586 N.W.2d 748, 755 (1998), and the defense of diminished capacity is available only where the charged offense is a specific intent crime. *People v. Denton*, 138 Mich. App. 568, 573; 360 N.W.2d 245, 248 (1984).

Therefore, defense counsel was not ineffective for failing to present a defense of diminished capacity, and appellate counsel was not ineffective for failing to raise this issue on appeal.

### b.  Competence

Petitioner alleges that his mental condition affected his ability to communicate with his attorneys and his competence before and during trial.  He asserts that his trial attorney should have investigated his mental state to ensure competence for trial and that appellate counsel was ineffective for failing to raise this issue on appeal.

"[T]he Constitution does not permit trial of an individual who 'lacks competency,'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008), but "not every mental illness demonstrates incompetence to stand trial."  *Rever v. Acevedo*, 590 F.3d 533, 538 (7th Cir.  2010).  The standard for competency is "(1) 'whether' the defendant has 'a rational as well as factual understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Edwards*, 554 U.S. at 170 (quoting *Dusky v. United States,* 362 U.S. 402, 402 (1960) (per curiam)) (emphasis omitted).  In other words, "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."  *Drope v. Missouri,* 420 U.S. 162, 171 (1975).

Petitioner was an articulate and knowledgeable witness at trial.  Although he rambled at times and stated that he was taking psychotropic medications (Tr. Aug. 21, 2000, at 84), he demonstrated a clear understanding of the charge against him and the legal proceedings.  He also

provided a considerable amount of detail concerning the incident in question. The trial court

stated at sentencing that Petitioner's memory "was very, very sharp, except for some facts

relating to what [he] told [the victim]. But as to time, date, and a lot of other minute facts, [he

was] as sharp as a tack." (Tr. Oct. 3, 2000, at 9-10.)

Petitioner has failed to show that he was incompetent to stand trial. Therefore, defense

counsel was not effective for failing to investigate Petitioner's mental health history or for failing

to have him evaluated for competence, and appellate counsel was not ineffective for failing to

raise this issue on appeal.

### 3. Failure to Call an Expert Witness

Petitioner asserts that his trial attorney should have presented an expert witness to bolster

the defense that his viral load was too low to transmit HIV and to counter Dr, Alena Jandourek's

testimony that there is a risk of transmitting HIV at any level of the virus in the blood.[3]

The Supreme Court's decision in *Strickland*

set out no specific instructions regarding the hiring of experts. Instead, such
decisions fall under *Strickland's* general reasonableness requirements, and also
perhaps under its duty-to-investigate rubric: "In any ineffectiveness case, a
particular decision not to investigate must be directly assessed for reasonableness
in all the circumstances, applying a heavy measure of deference to counsel's
judgments." *Strickland*, 466 U.S. at 691.

*Renusch v. Berghuis*, 75 F. App'x 415, 421 (6th Cir. 2003).

---

[3] Dr. Jandourek acknowledged at one point in her testimony that Petitioner's HIV was
considered undetectible, but she maintained that, even if a person's HIV were undetectible, the
person still had HIV and anyone infected with HIV is considered infectious. (Tr. Aug. 18, 2000,
at 214-16).

Petitioner himself acknowledged at trial that being undetectible meant one was still positive for HIV (Tr. Aug. 21, 2000, at 55-56), and he has presented no documentation to support his claim that HIV cannot be transmitted to another person if the HIV-infected person has a low viral load. Thus, he has failed to show that a defense expert could have mounted a credible challenge to Dr. Jandourek's testimony.

Furthermore, an expert defense witness on HIV would not have helped the defense, because the trial was a credibility contest. The primary question was whether the defendant or the alleged victim was credible on the issue of whether Petitioner informed the victim he was HIV-positive prior to having sexual relations with him. Under the circumstances, defense counsel appears to have made a reasonable decision not to investigate and produce an expert witness on HIV.

### 4. Summary

Petitioner has failed to show that his attorneys' performances were deficient and that the alleged deficiencies prejudiced the defense or the appeal. Therefore, the trial court's conclusion that Petitioner was not prejudiced from the alleged deficiencies was not contrary to, or an unreasonable application of, Supreme Court precedent.

### C. Failure to Instruct the Jury on Lesser-Included Offenses

Petitioner alleges that the trial court improperly denied his request for jury instructions on battery or gross indecency between males. According to Petitioner, the evidence would have supported a conviction for either one of those offenses.

The trial court declined to read an instruction on battery because, in its opinion, the two offenses were not in the same category of crimes and had no relationship to one another.  (Tr. Aug. 21, 2000, at 73.)  The Michigan Court of Appeals stated on review of Petitioner's claim that an instruction on battery would have been improper and that the trial court did not err in refusing to instruct on the offense.  Petitioner did not request a jury instruction on gross indecency between males.

### 1.  Legal Framework

The United States Supreme Court has not determined whether the failure to give jury instructions on lesser-included offenses in non-capital cases such as this one violates the right to due process.  *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980).  The United States Court of Appeals for the Sixth Circuit has concluded that "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'"  *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*)).  "[A] Beck instruction is only required when 'there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense,' but not the greater."  *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (quoting *Hopper v. Evans*, 456 U.S. 605, 610 (1982)).  "A lesser-included offense instruction is . . . not required when the evidence does not support it."  *Id.*

## 2. Application

Evidence that Petitioner committed the charged offense was substantial. The victim testified that Petitioner did not advise him of his HIV status until after they engaged in sexual acts. Two other prosecution witnesses (the couple with whom Petitioner was living at the time) also intimated that Petitioner did not notify the victim of his HIV status before having sexual relations with him, and Petitioner admitted as much in his statement to a detective. Thus, the evidence could not have led the jury to reasonably conclude that Petitioner was guilty of battery or gross indecency between men, but not the charged offense.

In addition, battery involves an unwanted touching, *see Espinoza v. Thomas*, 189 Mich. App. 110, 119; 472 N.W.2d 16, 21 (1991), and the sexual acts in this case were consensual. (Tr. Aug. 18, 2000, at 184; Aug. 21, 2000, at 99.) Therefore, a jury instruction on battery would not have been supported by the facts.

As for gross indecency between males, *see* Mich. Comp. Laws § 750.338, Petitioner did not request an instruction on that offense, nor object to the instructions as given. A claim that the trial court did not *sua sponte* instruct the jury on a lesser-included offense is not cognizable on habeas corpus review. *Manning v. Rose*, 507 F.2d 889, 895 (6th Cir. 1974). Petitioner is not entitled to relief on the basis of his challenge to the jury instructions.

### D. The Sentence

Petitioner's fourth and fifth claims challenge his sentence and presentence report.

### 1. Failure to Correct the Pre-sentence Report

Petitioner contends that his sentence is unconstitutional because the trial court failed to correct his presentence report, which allegedly indicates that he used his HIV status as a "dangerous weapon" or as a "threat of death." Petitioner claims that this is incorrect information, which led to improper scoring of the offense variables of the Michigan sentencing guidelines. Petitioner also maintains that the Michigan Department of Corrections is using the inaccurate information in his presentence report to justify an erroneous security classification and to deny him release on parole.

Petitioner has not identified the section of his presentence or parole reports where it supposedly states that used his HIV status as a "dangerous weapon" or as a "threat of death." Even assuming that these phrases appear in the reports, a sentence violates due process of law only where the trial court relied on "extensively and materially false" information, which the defendant had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). "*Townsend* and its progeny are generally viewed as having established a due process 'requirement that a defendant be afforded the opportunity of rebutting derogatory information demonstrably relied upon by the sentencing judge, when such information can in fact be shown to have been materially false.'" *Stewart v. Erwin*, 503 F.3d 488, 495 (6th Cir. 2007) (quoting *Collins v. Buchkoe*, 493 F.2d 343, 345 (6th Cir. 1974)).

The trial court stated at sentencing that Petitioner's conduct was life-threatening (Tr. Oct. 3, 2000, at 6), but the Michigan Court of Appeals remanded the case for re-sentencing because there was no proof that the victim suffered a life-threatening or an incapacitating injury. The

Court of Appeals declined to speculate whether such an injury would occur in the future. On remand, the sentencing guidelines were revised downward from fifty-eight months at the low end to forty-eight months. The trial court then sentenced Petitioner to a minimum of forty-eight months in prison to a maximum of fifteen years. Petitioner has failed to show that the trial court relied on the contention that he used his HIV status as a "dangerous weapon" or as a "threat of death."

Although Petitioner maintains that the incorrect information remains in his presentence report, "the mere presence of hearsay or inaccurate information in a [presentence report] does not constitute a denial of due process." *Hili v. Sciarrotta*, 140 F.3d 210, 216 (2d Cir. 1998). The Court therefore finds that the trial court did not deprive Petitioner of due process or rely on materially false information, which Petitioner had no opportunity to correct, by failing to correct Petitioner's presentence report.

### 2. The Sentencing Guidelines

Petitioner contends next that, because the sentencing guidelines were incorrectly scored, he is considered dangerous and has been placed in maximum security prisons and denied parole. Petitioner has no constitutional right to release on parole, *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex,* 442 U.S. 1, 7 (1979), or to placement in any particular prison, *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995). He nevertheless concludes from the way he has been treated by correctional officials and the parole board that his sentence is cruel and unusual punishment.

"A state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990). Therefore, Petitioner's challenge to the scoring of the Michigan sentencing guidelines is not a cognizable claim on habeas corpus review. *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).

Furthermore, "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

"Michigan has an undeniable compelling interest in discouraging the spread of HIV," *People v. Jensen*, 231 Mich. App. at 458; 586 N.W.2d at 757, and the Supreme Court has held that life sentences for even nonviolent offenses are constitutional. *United States v. Watkins*, 509 F.3d 277, 282 (6th Cir. 2007) (citing *Ewing v. California*, 538 U.S. 11, 30-31 (2003) (upholding a repeat offender's sentence of twenty-five years to life imprisonment for stealing three golf clubs), and *Harmelin*, 501 U.S. at 994-95 (upholding a life sentence without the possibility of parole for possession of 672 grams of cocaine)). The Court therefore concludes that, to the extent Petitioner has asserted a constitutional claim, his claim lacks merit because his sentence of

forty-eight months to fifteen years is not grossly disproportionate to the crime or the offender, nor cruel and unusual punishment.

### 3. *Blakely v. Washington*

Lastly, Petitioner contends that his sentence is unconstitutional under the Supreme Court's ruling in *Blakely v. Washington*, 542 U.S. 296 (2004). The basis for this claim is the trial court's conclusion at sentencing that the victim suffered serious psychological injury. Petitioner maintains that there was no evidence at trial to support this conclusion and that the trial court merely relied on its personal assessment of the victim during trial.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely*, the Supreme Court stated that the "statutory maximum" for purposes of *Apprendi* "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely,* 542 U.S. at 303.

*Blakely* was based on a determinate sentencing scheme, *United States v. McCraven*, 401 F.3d 693, 700 (6th Cir. 2005), whereas Michigan's sentencing scheme is considered indeterminate. *Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *People v. Drohan*, 475 Mich. 140, 161; 715 N.W.2d 778, 790 (2006). Because Michigan's sentencing laws create an indeterminate-sentencing scheme, Petitioner's sentence does not violate his right to due process or his right to a jury trial. *Montes*, 599 F.3d at 497 (citing *Blakely*, 542 U.S. at 309-10).

Furthermore, Petitioner admitted at trial that the victim became "very distraught" and did not want to eat or be around Petitioner when he learned that Petitioner had HIV. (Tr. Aug. 21, 2000, at 56-57.) Thus, the trial court arguably relied on facts that Petitioner himself admitted when the court concluded that the victim was traumatized. No *Blakely* error occurred, and Petitioner has no right to a lesser sentence.

## IV. Conclusion

Petitioner has not shown that he is in custody in violation of federal law, and the state courts' orders and opinions were not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The state courts' orders also did not result in an unreasonable determination of the facts. Accordingly, the amended petition for a writ of habeas corpus [Dkt. #88] is **DENIED**.

The Court declines to issue a certificate of appealability because reasonable jurists would not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues are adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner nevertheless may proceed *in forma pauperis* on appeal without further authorization because he was permitted to proceed *in forma pauperis* in this Court. Fed. R. App. P. 24(a)(3).

## V. Petitioner's Pending Motions

Petitioner seeks a variety of relief in his pending motions. In his motion to amend, he seeks an institutional transfer to a federal facility, appointment of counsel, and an order

compelling Respondent to address all his claims. He also seeks to have the Court excuse any procedural defaults on his part and to delete any issues that have not been properly raised.

Respondent has addressed Petitioner's claims, and Petitioner has no constitutional right to appointment of counsel on habeas review, *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002), or to "placement in any particular prison," *Williams v. Bass*, 63 F.3d at 485. Therefore, Petitioner's motion to amend is **DENIED** as to his request for appointment of counsel, an institutional transfer, and an order compelling Respondent to address all the issues. The motion is **GRANTED** to the extent that the Court has excused any procedural defaults and any failure to exhaust state remedies.

Petitioner's motion for a default judgment [Dkt. #104] is **DENIED,** because Respondent is not in default. He filed a timely answer to the amended petition within fifty-six days of the amended petition, as directed by the Court. *See* Dkt. #85 (Jan. 20, 2010). Finally, the motion for an evidentiary hearing on dangerousness and for release on bond [Dkt. #93] is **DENIED**, because Petitioner has not shown "some circumstance" making his habeas petition "exceptional and deserving of special treatment in the interests of justice." *Aronson v. May*, 85 S. Ct. 3, 5 (1964).

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: December 28, 2010

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on December 28, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary

22